677 So.2d 700 (1996)
Kristen P. HARBOUR
v.
Steven C. HARBOUR.
No. 95 CA 2168.
Court of Appeal of Louisiana, First Circuit.
June 28, 1996.
*701 Steve H. Benton, Baton Rouge, for Plaintiff-Appellee Kristen P. Harbour.
Stan Aaron, Baton Rouge, for Defendant-Appellant Steven C. Harbour.
Before CARTER, PITCHER, and CRAIN, JJ.[1]
PITCHER, Judge.
Steven C. Harbour appeals from a trial court's judgment, modifying a Mississippi divorce decree under which he is obligated to pay child support. In modifying the decree, the trial court increased his child support obligation from $200.00 per month to $546.00 per month. We affirm in part and reverse in part.

BACKGROUND AND PROCEDURAL HISTORY
Kristen P. Harbour (Mrs. Harbour) and Steven C. Harbour (Mr. Harbour) were married on May 25, 1991, in Mississippi. During the marriage, one child, Reagan Elizabeth Harbour, was born. On December 17, 1993, they were divorced by a Chancery Court of Pike County, Mississippi, divorce decree. The decree incorporated a Property Settlement-Child Custody Agreement between Mrs. Harbour and Mr. Harbour. In the agreement, joint custody of Reagan was granted to the Harbours with Mrs. Harbour having primary custody. In addition, Mr. Harbour was to pay $200.00 per month in child support.
Subsequently, Mrs. Harbour and the child moved to East Baton Rouge Parish, Louisiana. Mr. Harbour continued to live in Mississippi. On February 8, 1995, Mrs. Harbour filed a petition in the Family Court of East Baton Rouge Parish, seeking to make the out-of-state decree executory and to reset Mr. Harbour's child support payments.
On March 6, 1995, Mr. Harbour filed a declinatory exception pleading the objection of lack of personal jurisdiction and a motion for forum non conveniens. Mr. Harbour alleged that he was a resident of Mississippi and did not have any contacts with the State of Louisiana sufficient to empower the trial court to exercise personal jurisdiction over him. In the alternative, he contended that this matter should be transferred to Mississippi because of a pending action to modify child support.
Trial on the rule to make the out-of-state decree executory and to reset child support was held on March 21, 1995. At the beginning of the trial, a hearing on the declinatory exception pleading the objection of lack of personal jurisdiction and the motion for forum non conveniens was held. Following the trial, judgment was rendered, denying Mr. Harbour's declinatory exception pleading the objection of lack of personal jurisdiction and his motion for forum non conveniens. The trial court ordered the decree of the Chancery Court of Pike County, Mississippi, made executory. The trial court also ordered that Mr. Harbour's child support payment be increased from $200.00 per month to $546.00 per month. Subsequently, the trial court amended the judgment to order that Mr. Harbour maintain a medical insurance policy on his daughter.
Mr. Harbour now appeals and alleges the following assignments of error:
1. The trial judge erred in entering [a] judgment at all, since the trial court did not have subject matter jurisdiction to decide this case.

*702 2. The trial judge erred in failing to grant the exception [pleading the objection] of lack of personal jurisdiction.
3. The trial judge erred in failing to grant the [motion for] forum non conveniens.

ASSIGNMENT OF ERROR NUMBER ONE
In this assignment of error, Mr. Harbour argues that the trial court lacked subject matter jurisdiction to modify the Mississippi child support decree. Mr. Harbour asserts that, in accordance with 28 U.S.C. § 1738B, the Mississippi court has continuing exclusive jurisdiction over this child support matter because he is still a resident of Mississippi.[2]
Prior to October 20, 1994, there was no specific statutory provision in Louisiana addressing the issue of modification of a foreign child support decree by a Louisiana court. However, Louisiana courts permitted this modification to occur by the following two methods: 1) the party who presently resided in Louisiana (Mrs. Harbour) could initiate modification of the foreign order in the foreign court which had original jurisdiction over the child support matter (Chancery Court of Pike County, Mississippi), or 2) the party (Mrs. Harbour) could have the appropriate district court in Louisiana recognize the judgment, and then invoke the proper proceedings for obtaining an increase in child support. State v. Cross, 94-2334 p. 4 (La. App. 4th Cir. 5/16/95), 655 So.2d 798, 799-800.
However, on October 20, 1994, the U.S. Congress enacted the Full Faith and Credit for Child Support Orders Act, 28 U.S.C. § 1738B.[3] The stated policy of this Act is the need "to establish national standards under which the courts of the various States shall determine their jurisdiction to issue a child support order and the effect to be given by each State to child support orders issued by the courts of other States." Full Faith and Credit for Child Support Orders Act, Pub.L. No. 103-383, § 2(b), 108 Stat. 4063 (1994). The multi-faceted purposes of the Act are:
(1) to facilitate the enforcement of child support orders among the States;
(2) to discourage continuing interstate controversies over child support in the interest of greater financial stability and secure family relationships for the child; and
(3) to avoid jurisdictional competition and conflict among State courts in the establishment of child support orders.
Full Faith and Credit for Child Support Orders Act, Pub.L. No. 103-383, § 2(c), 108 Stat. 4063.
The Full Faith and Credit for Child Support Orders Act was effective on October 20, 1994, prior to the filing of Mrs. Harbour's petition on February 8, 1995. Thus, the trial court should have applied the provisions of this Act to determine its jurisdiction to modify a foreign child support decree.
The Act compels a state court to "enforce according to its terms a child support order made consistently with this section by a court of another State" and forbids a state court from "seek[ing] or mak[ing] a modification of such an order except in accordance with subsection *703 (e) [of the Act]." 28 U.S.C. § 1738B(a).[4]
The Full Faith and Credit for Child Support Orders Act, 28 U.S.C. § 1738B, provides, in pertinent part, as follows:
(c) Requirements of child support orders.A child support order made is made consistently with this section if
(1) a court that makes the order, pursuant to the laws of the State in which the court in located
(A) has subject matter jurisdiction to hear the matter and enter such an order; and
(B) has personal jurisdiction over the contestants; and
(2) reasonable notice and opportunity to be heard is given to the contestants.
* * * * * *
(e) Authority to modify orders.A court of a State may make a modification of a child support order with respect to a child that is made by a court of another State if
(1) the court has jurisdiction to make such a child support order; and
(2)(A) the court of the other State no longer has continuing, exclusive jurisdiction of the child support order because that State no longer is the child's State or the residence of any contestant; or
(B) each contestant has filed written consent to that court's making the modification and assuming continuing, exclusive jurisdiction over the order.
First, we must determine whether the Mississippi decree was consistent with the Act. 28 U.S.C. § 1738B(c). We find no claims by either party that the Mississippi court lacked subject matter jurisdiction or that either party failed to receive reasonable notice and an opportunity to be heard. Certainly, the Mississippi court had personal jurisdiction over the Harbours who were residents of Mississippi when the decree was rendered. Therefore, we conclude that the Mississippi decree was rendered in accordance with the Act. Thus, Mississippi retains continuing exclusive jurisdiction over the Mississippi decree.
In order to modify the decree in Louisiana, the two-part criteria under subsection (e) of the Act must be met. Under the first criterion, the Family Court of East Baton Rouge Parish must possess jurisdiction to enter a child support order. Clearly, Louisiana Constitution Art. 5, § 18[5] and LSA-R.S. 13:1401(A)(1)[6] gives the Family Court of East Baton Rouge Parish jurisdiction to enter *704 a child support order. Thus, the first criterion is met.
Under the second criterion, one of two conditions must be met. The first of the two conditions requires the state that renders the original decree (Mississippi) to no longer be the residence of the child or any contestant. 28 U.S.C. § 1738B(e)(2)(A). In the instant case, since Mr. Harbour still resides in Mississippi, this condition is not met.[7] Therefore, in order for the Louisiana court to modify the Mississippi decree, the other condition must exist.
Under the second condition, each contestant must file a written consent, permitting the other state's court to modify and assume continuing, exclusive jurisdiction over the order. In reviewing the record, the evidence reflects that neither Mrs. Harbour nor Mr. Harbour filed a written consent. Thus, Mrs. Harbour failed to meet the second criterion in order to modify the Mississippi decree in Louisiana. Although Louisiana's Family Court has subject matter jurisdiction, the Chancery Court of Pike County, Mississippi, maintained continuing exclusive jurisdiction over the Mississippi decree, obligating Mr. Harbour to pay $200.00 per month in child support. Therefore, the Family Court of East Baton Rouge Parish only has the authority to enforce the Mississippi decree. Thus, we reverse that part of the judgment, increasing Mr. Harbour's child support payments to $546.00 per month and ordering him to maintain a medical insurance policy on his daughter.

ASSIGNMENTS OF ERROR NUMBERS TWO AND THREE
Because of our finding in Assignment of Error Number One, a discussion of Assignments of Error Numbers Two and Three is unnecessary.

EXECUTORY JUDGMENT
Although Mr. Harbour asserts that the entire judgment should be annulled, he does not complain about the trial court's order, making the Mississippi judgment executory. The record reflects that Mrs. Harbour's actions for making the Mississippi judgment executory was conducted by an ordinary proceeding, in accordance with LSA-C.C.P. art. 2541 A. Mrs. Harbour filed a petition and personally served Mr. Harbour. In addition, the record reflects that, at the time of the Louisiana proceeding, Mr. Harbour did not present any evidence attacking Mississippi's jurisdiction. Thus, the trial court correctly ordered that the Mississippi judgment be made executory. See In re Terry, 527 So.2d 448 (La.App. 5th Cir.1988).[8]

CONCLUSION
For the foregoing reasons, the trial court's judgment, making the Mississippi judgment executory, is affirmed. In all other respects, the judgment of the trial court is reversed. Costs of this appeal are assessed to Kristen P. Harbour.
AFFIRMED IN PART, REVERSED IN PART.
NOTES
[1] Judge Hillary J. Crain, retired, served as judge pro tempore by special appointment of the Louisiana Supreme Court. Due to the appointment of Judge Hillary J. Crain as Chairman of the Louisiana Gaming Control Board prior to rendition, but after his concurrence therein, this opinion is rendered unanimously by Carter and Pitcher, JJ. See A Second Mortgage Company of Baton Rouge, Inc. v. Gatlin, 233 So.2d 583 (La.App. 1st Cir. 1970).
[2] We note that Mrs. Harbour asserts that Mr. Harbour argues the lack of subject matter jurisdiction for the first time on appeal, and therefore, the issue is not properly before the court.

An appellate court has discretion to consider an exception of lack of jurisdiction over the subject matter filed in that court, because the exception goes to the core of the validity of a judgment and is not subject to the waiver provisions generally affecting declinatory exceptions. DeHaven v. DeHaven, 412 So.2d 537, 538 (La.1982).
Mr. Harbour adequately raised the issue of lack of subject matter jurisdiction for the first time on appeal by addressing the issue in his brief filed with this court. Clearly, Mrs. Harbour had sufficient time to address this issue as established by her brief filed in opposition to Mr. Harbor's argument of lack of subject matter jurisdiction. Thus, this assertion has no merit.
[3] Since Louisiana does not have a specific statutory provision addressing the modification of a foreign child support decree, the application of the preemption doctrine, which invalidates state laws that "interfere with, or are contrary to" federal law, is unnecessary. See Haydel v. Hercules Transport, Inc., 94-1246, p. 6 (La.App. 1st Cir. 4/7/95), 654 So.2d 418, 423, writ denied, 95-1172 (La. 6/23/95), 656 So.2d 1019.
[4] We note that Louisiana has recently adopted a similar provision for addressing interstate child support orders. Through Acts 1995, No. 251, effective January 1, 1996, the legislature enacted the Uniform Interstate Family Support Act, for the general purpose of making uniform the law with respect to the subject of this Chapter (family support) among states enacting it. LSA-Ch. C. art. 1301.2.

Under this Act, LSA-Ch. C. art. 1306.11 A specifically addresses the issue presently before us and provides as follows:
A. After a child support order issued in another state has been registered in this state, the responding court of this state may modify that order only if, after notice and hearing, it finds that either:
(1) All of the following requirements are met:
(a) The child, the individual obligee, and the obligor do not reside in the issuing state.
(b) A petitioner who is a nonresident of this state seeks modification.
(c) The respondent is subject to the personal jurisdiction of the court of this state.
(2) An individual party or the child is subject to the personal jurisdiction of the court and all of the individual parties have filed a written consent in the issuing court providing that a court of this state may modify the support order and assume continuing, exclusive jurisdiction over the order.
[5] Louisiana Constitution, Art. 5, § 18 provides as follows:

Notwithstanding any contrary provision of Section 16 of this Article, juvenile and family courts shall have jurisdiction as provided by law.
[6] LSA-R.S. 13:1401(A)(1) provides as follows:

A. There is hereby established the family court for the parish of East Baton Rouge, which shall be a court of record with exclusive jurisdiction in the following proceedings:
(1) All actions for divorce, annulment of marriages, establishment or disavowal of the paternity of children, spousal and child support, and custody and visitation of children, as well as of all matters incidental to any of the foregoing proceedings, including but not restricted to the issuance of conservatory writs for the protection of community property, the awarding of attorney fees in judgments of divorce, the cumulation of and rendering executory of spousal and child support, the issuance of writs of fieri facias and garnishment under judgments of the court for spousal and child support and attorney fees, jurisdiction of which was vested in the Nineteenth Judicial District Court for the parish of East Baton Rouge prior to the establishment of the family court for the parish of East Baton Rouge....
[7] See also Bednarsh v. Bednarsh, 282 N.J.Super. 482, 660 A.2d 575 (Ch.1995).
[8] We note that once a judgment of another state has been properly recognized and made the judgment of a Louisiana court, it has the same effect as if it was rendered by a Louisiana court. Patterson v. Patterson, 436 So.2d 603, 604 (La.App. 4th Cir.1983). Based upon this jurisprudence and under the law prior to the enactment of the Full Faith and Credit for Child Support Orders Act and the Uniform Interstate Family Support Act, we believe it would have been procedurally improper to permit a party to simultaneously seek, through the same action, a decree making a foreign child support decree executory and a modification of the same decree.